**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **DIEM LLC,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 6:17-cv-186-JRG-JDL** |
| **BIGCOMMERCE, INC.** | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

This claim construction opinion construes the disputed claim terms in U.S. Patent No. 7,770,122 ("the '122 Patent"). Plaintiff Diem LLC ("Diem" or "Plaintiff") alleges that Defendant BigCommerce, Inc. ("BigCommerce" or "Defendant") infringes the '122 Patent. Plaintiff filed an opening claim construction brief (Doc. No. 56), to which Defendant filed a responsive brief (Doc. No. 59),[1] and Plaintiff filed a reply (Doc. No. 62). The Parties additionally submitted a Joint Claim Construction Chart pursuant to P.R. 4-5(d). (Doc. No. 64.) On February 6, 2018, the Court held a claim construction hearing. Upon consideration of the parties' arguments, and for the reasons stated herein, the Court adopts the constructions set forth below.

**OVERVIEW OF THE PATENTS**

Plaintiff alleges Defendant infringes certain asserted claims of the '122 Patent. Plaintiff states that "the claimed method allows lay people having no knowledge about computer coding to create, customize, and host their own website." (Doc. No. 56 at 2.) The '122 Patent is titled "Codeless Dynamic Websites Including General Facilities," and relates to website hosting without coding. *See generally* '122 Patent. More specifically, the '122 Patent describes "a

---

[1] A corrected responsive brief was filed with errata as Docket No. 60-1. All citations herein will be to the corrected version unless otherwise noted.

method that enable[s] even non-technical people to host their own websites without coding, including general facilities such as webmail, chat, subscription, send page, user registration, login, password maintenance, advertisement hosting, chat box, RSS Feeds etc." *Id.* at 2:7–11. A person who hosts the website is called a "user" and a person who visits a website is called a "visitor." *Id*. at 2:15–17. The user creates the website using a "codeless website development and hosting system," which provides a hosting page with a homepage template. *Id.* at 2:15–18. The hosting page contains various text boxes, text areas, as well as control buttons that help build a website. *Id.* at 2:17–63. These concepts are reflected in the patent's asserted claims, and independent claim 1 is set forth below for reference:

1. A method comprising

> causing a user computer to request a template web page computer code file from a server computer in response to a request by a user through a web browser computer program running on the user computer;
> supplying the template web page computer code file from the server computer to the user computer in response to the request, wherein the template web page computer code file includes code representing a first plurality of control buttons, a second plurality of visible items, a host button and a fourth plurality of hidden fields;
> storing the template web page computer code file in a temporary computer memory of the user computer,
> causing the user computer to interpret the template web page computer code file to display a template web page display on a user monitor of the user computer wherein the template web page display includes the first plurality of control buttons, the second plurality of visible items, and the host button;
> causing the first plurality of control buttons, the second plurality of visible items, and the host button of the template web page display to be stored in a first location in the temporary computer memory of the user computer;
> causing the fourth plurality of hidden fields to be located at a second location in the temporary computer memory of the user computer;
> modifying the template web page display to form a modified template web page display by executing functions of a script computer programming code of the template web page computer code file, wherein the template web page display is modified by modifying one or more of the second plurality of visible items of the template web page display on the user monitor of the user computer;

wherein the modified template web page display includes the first plurality of control buttons, a third plurality of visible items, which includes one or more modified visible items of the second plurality of visible items and any non-modified visible items of the second plurality of visible items, and the host button;

causing the third plurality of visible items of the modified template web page display to be stored in the temporary computer memory of the user computer;

receiving at the user computer, a user selection of the host button of the modified template web page display;

in response to the user selection of the host button, causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer;

in response to the user selection of the host button, further causing the content and attributes of the third plurality of visible items of the modified template web page display to be taken from the fourth plurality of hidden fields in the second location in temporary computer memory and wrapped in a request object containing no html file in temporary memory of the user computer and sending the request object containing no html file to the server computer;

receiving the request object containing no html file at the server computer;

storing the request object containing no html file in temporary memory of the server computer;

causing the server computer to take the content and attributes of the third plurality of visible items of the modified template web page display out of the request object containing no html file and to store them as text in a database; and

retrieving the content and attributes of the third plurality of visible items of the modified template web page display from the database, and transmitting them to a visitor computer with print instructions in response to a visitor request for a web page comprising the third plurality of visible items of the modified template web page display;

causing the browser computer program running on the visitor computer to interpret the print instructions to display a visitor web page display comprising the third plurality of visible items of the modified template web page display.

'122 Patent at 37:5–38:18.

There are fourteen disputed terms or phrases in the asserted claims.

**LEGAL STANDARD**

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise

possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent."). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the

patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *see also Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003) ("The disclaimer . . . must be effected with 'reasonable clarity and deliberateness.'") (citations omitted)). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

In patent construction, "subsidiary fact finding is sometimes necessary" and the court "may have to make 'credibility judgments' about witnesses." *Teva v. Sandoz*, 135 S.Ct. 831, 838 (2015). In some cases, "the district court will need to look beyond the patent's intrinsic evidence

and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 841. "If a district court resolves a dispute between experts and makes a factual finding that, in general, a certain term of art had a particular meaning to a person of ordinary skill in the art at the time of the invention, the district court must then conduct a legal analysis: whether a skilled artisan would ascribe that same meaning to that term *in the context of the specific patent claim under review*." *Id.* (emphasis in original). When the court makes subsidiary factual findings about the extrinsic evidence in consideration of the "evidentiary underpinnings" of claim construction, those findings are reviewed for clear error on appeal. *Id.*

## DISCUSSION

The parties dispute the meaning of the following claim terms, which are set forth herein:

## I.  DISPUTED CLAIM TERMS

### A.  "the user" / "the visitor" / "the program" ('122 Patent, Claim 1)

| United States Patent No. 7,770,122 Claim Language | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "causing a user computer to request a template web page computer code file" | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing a user computer to request a template web page computer code file" | "A user causing a user computer to request a template web page computer code file" |
| "storing the template web page computer code file in a temporary computer memory of the user computer" | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively* | "The user storing the template web page computer code file in a temporary computer memory of the user computer." |

| | | |
|---|---|---|
| | "Software service provider storing the template web page computer code file in a temporary computer memory of the user computer" | |
| **"causing the user computer to interpret the template web page computer code file"** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing the user computer to interpret the template web page computer code file" | "The user causing the user computer to interpret the template web page computer code file" |
| **"causing the first plurality of control buttons, the second plurality of visible items, and the host button of the template web page display to be stored in a first location in the temporary computer memory of the user computer;"** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing the first plurality of control buttons, the second plurality of visible items, and the host button of the template web page display to be stored in a first location in the temporary computer memory of the user computer" | "The user causing the first plurality of control buttons, the second plurality of visible items, and the host button of the template web page display to be stored in a first location in the temporary computer memory of the user computer" |
| **"causing the fourth plurality of hidden fields to be located at a second location in the temporary computer memory of the user computer;"** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing the fourth plurality of hidden fields to be located at a second location in the temporary computer memory of the user computer" | "The user causing the fourth plurality of hidden fields to be located at a second location in the temporary computer memory of the user computer" |
| **"causing the third plurality of visible items of the modified template web page display to be stored** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning. | "The user causing the third plurality of visible items of the modified template web page display to be stored in |

| | | |
|---|---|---|
| **in the temporary computer memory of the user computer**;" | *Alternatively*<br><br>"Software service provider causing the third plurality of visible items of the modified template web page display to be stored in the temporary computer memory of the user computer" | the temporary computer memory of the user computer" |
| **"causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer**;" | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer" | "The user causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer" |
| **"sending the request object containing no html file to the server computer**;" | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider sending the request object containing no html file to the server computer" | "The user sending the request object containing no html file to the server computer." |
| **"causing the server computer to take the content and attributes of the third plurality of visible items of the modified template web page display out of the request object containing no html file and to store them as text in a** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing the server computer to take the content and attributes of the third plurality of visible items | "The provider causing the server computer to take the content and attributes of the third plurality of visible items of the modified template web page display out of the request object containing no html file and to store them as text in a database" |

| | | |
|---|---|---|
| **database**;" | of the modified template web page display out of the request object containing no html file and to store them as text in a database" | |
| **"causing the browser computer program running on the visitor computer to interpret the print instructions"** | No construction necessary, as the term should be afforded its plain-and-ordinary meaning.<br><br>*Alternatively*<br><br>"Software service provider causing the browser computer program running on the visitor computer to interpret the print instructions" | "The visitor causing the browser computer running on the visitor computer to interpret the print instructions." |

Plaintiff states that "[t]he crux of the dispute for these [ten] terms is whether it is appropriate to add language to these terms that identifies a particular entity who performs the claimed action." (Doc. No. 56 at 8.) Most of the claim construction disputes center on terms such as "causing…," "storing…," and "sending…," and the question as to what/who does the "causing," "storing," and "sending."

Plaintiff asks for no construction, or in the alternative, a construction that prefaces the term with "the software provider." Plaintiff maintains that the language in the overall patent shows that the claims were intended to show performance by the software provider. *Id.* at 9–10. Plaintiff points out that certain dependent claims note that an action is done "by a user," and others do not specify what entity performs the steps. *Id.* at 10–11. Plaintiff concludes this construction was intentional and should be given meaning. *Id.* Plaintiff then examines each disputed claim step and argues that Defendant's proposed additional language should be rejected because the construction contrasts with the utility of the patent or that the language is already in the claim, making added terms irrelevant. *Id.* at 9–25. Defendant counters that the software provider does not cause the actions of the patent, because other actions are needed. (Doc. No.

60-1 at 3.) Specifically, Defendant argues that each construction should include a preface of "the user," "the provider," or "the visitor." *Id.* Defendant argues that the '122 Patent specification and file history, as well as the extrinsic evidence show that the user is the entity that causes certain tasks to occur, not the software provider. *Id.* at 4–12. Defendant concludes that there is no evidence in the record that any party besides those Defendant provides in the claim construction operates the function in the claim, and the language is therefore appropriate. *Id.* at 14–17.

For each of the above terms, the primary dispute between the parties is the same— whether the user performs the claimed action, or whether it is done by the software provider. To resolve this dispute, the Court must look at the context of claim 1 as whole as well as the individually claimed steps to determine who performs each claimed method step. Here, claim 1 is a method claim that claims several steps to enable a non-technical user to host a website without coding. *See* '122 Patent at 37:5–38:15; 2:6–8. Plaintiff wishes to read out any user action from claim 1 and argues that the user is simply the impetus to start what is claimed, but is outside the scope of the claimed steps. However, this reading of the claim does not comport with the plain claim language or the intrinsic evidence.

Looking first, for example, at step one of claim 1, it requires "causing a user computer to request a template web page computer code file from a server computer in response to a request by a user through a web browser computer program running on the user computer…" '122 Patent at 37:6–9. Here, Plaintiff contends that although the claim recites "in response to *a request by a user* through a web browser computer program running on the user computer," the user action is nonetheless outside the scope of the claim. Plaintiff contends that the true claimed step is simply "causing a user computer to request a template web page computer code file from

a server computer," which can be done entirely by the software provider. Thus, under Plaintiff's interpretation, no user action is needed to meet the requirements of this claim step. This interpretation effectively reads out the plain language of the claim that recites "a request by a user." The specification makes clear that such a request by the user is done "by a user typing a URL…". *See* '122 Patent at 34:25–30 ("…the template web page computer code file is requested simply by a user typing a URL (universal resource locator) of the template web page computer code file in an address box of the user's browser on the user's computer monitor and hitting an enter button of the user's computer keyboard."). The specification thus describes the request being made by an affirmative action of the user typing a URL. Indeed, as the goal of the invention is to enable a non-technical user to host a website without the need to code, it is only logical that the user be a component of the claimed invention; otherwise, the claim could simply recite software capable of coding on behalf of the user. Plaintiff contends that no software claim could ever be written without the user, but Plaintiff fails to appreciate that this is a method claim indisputably initiated by action of a user, and indeed the patentee could have drafted a software claim configured to do the claimed steps or a claim that only calls out actions at the server. Here, the claimed steps of the method claim are not written as such, but require specific performance of each action recited including user action.

Even accepting Plaintiff's interpretation that the claim is written specifically to not include any action of the user—effectively divorcing the second clause of step one of claim 1— the steps of claim 1 themselves do not support this interpretation that the user is absent from the claim. Plaintiff relies on claim 13, a dependent claim that depends from claim 1, to argue that the patentee's intentional drafting of requiring user action by first claiming "a user selecting" followed by "in response to the user selecting," indicates that the patentee's use of the phrase "in

response to" is a non-claimed passive action of the user. However, Plaintiff does not address the steps of claim 1 that include an active verb done by the user. For example, step seven requires "modifying the template web page display…" '122 Patent at 37:32–39. Although this step is not in dispute, the action of "modifying the template…" clearly requires action by the user. Indeed, the specification makes clear that the user modifies the template. *See, e.g.*, '122 Patent at 35:14–15 ("a user modifies the template web page display by using the computer processor of the user computer…"); 33:30–31 ("At step 1206, a user computer (as operated by a user) modifies the template web page computer code file"); 5:9–12 ("the user can modify the background color and border of the form as well as the colors, fonts and borders of the labels and input boxes."); 27:26–29 ("The location, text, font and color of the label 690a can be modified by keeping the cursor in a box of the label 690a (border not visible since sup-pressed) and using the control buttons as required."); *contra* '122 Patent at 33:63–65 ("…the server computer receives the modified template web page computer code file (having HTML tags)…"). Even under Plaintiff's divorced interpretation of the alleged "passive" claim language reciting user action, the claim itself cannot be performed without some action by the user. Thus, Plaintiff's claim differentiation arguments are not persuasive.

Similarly, step ten recites "receiving at the user computer, a user selection of the host button of the modified template web page display." '122 Patent at 37:48–49. The parties agree that the claim term should be construed to mean "a user selection of the host button of the modified template web page display is received at the user computer." (Doc. No. 64-1, at 14.) Despite this rather explicit agreement implicating the user selection of the host button, Plaintiff argues that the action is "receiving" and that therefore the user's selection is not imperative to what is required of the claim. Again, the Court does not find it appropriate to read the claim

language in such a divorced manner. Moreover, as explained above, even if the claim could be read as Plaintiff suggests, when looking at the entirety of the claim, such an argument does not prevail where at least one step requires active "modification" by the user.

Thus, looking at the disputed claim terms individually, and in the context of the entire claim and the goals of the invention, the Court resolves the parties' dispute as follows. Action by the user is required in the method of claim 1 as discussed herein. Specifically, the Court construes "causing a user computer to request a template web page computer code file" to mean "a request by a user causing a user computer to request a template web page computer code file." With respect to the claim terms "causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer," and "sending the request object containing no html file to the server computer" (both terms found in clauses being prefaced with the language "in response to the user selection of the host button"), the Court finds that no construction is necessary with the understanding that user selection of host button must first occur as agreed in the prior claimed step: "a user selection of the host button of the modified template web page display is received at the user computer."

As to the remainder of the above listed claim terms set forth in claim 1, the Court finds that no construction is necessary with the understanding that step 1 requires user action to initiate the software and performance of these steps that follow the user-initiated action on the server end. Figure 13B of the '122 Patent shows a diagram that supports such an interpretation of the claim:



Fig. 13B

'122 Patent, Fig. 13B.

Figure 13B provides an exemplary embodiment wherein the user first modifies the template web page display, and then the user "by using the browser computer program…" "causes all visible items…" '122 Patent, Fig. 13B. While Figure 13B is not directed to any particular claimed steps of claim 1, it still provides guidance with respect to the patentee's drafting of the claim. For example, step 1312 represents a description of user actions in general and explicitly describes those actions in the context of a "user, by using the browser computer program running…on the user computer, … through execution of script computer programming

15

code of the template web page computer code file….” Thus, this figure further clarifies that upon user initiation of a step, whether such step is written passively or affirmatively, the execution of the code triggered by the user's actions can cause the subsequent recited actions. Indeed, such an interpretation is the only logical interpretation of many of the claimed steps.

For example, as to Defendant's request to insert “the user” in to several of these claimed steps, Defendant ultimately agreed with the Court that adding “the user” would result in importation of the specification and render nonsensical results. Indeed, Defendant's only argument for consistently including “the user” was not a claim construction argument, but rather the argument that under 35 U.S.C. § 271 all steps must be attributed to one actor. While this argument may present an issue with respect to liability, it does not present a claim construction dispute where the steps of the claim are easily understood by their plain and ordinary meaning. In other words, the parties agree and clearly understand from the express claim language which of these steps are being done by the software. The only dispute was whether any of the steps required user action. As discussed herein, the Court has resolved that dispute with respect to the specific steps that require action of the user to compete and/or initiate the claimed process.

Therefore, having resolved the parties' dispute regarding whether claim 1 requires action by the user, the Court finds no further construction of the above listed claim terms is necessary as the plain language of the claim is clear. For convenience, the below chart summarizes the Court's constructions for the disputed terms of claim 1:

| United States Patent No. 7,770,122 Claim Language | Court's Construction |
| --- | --- |
| **“causing a user computer to request a template web page computer code file”** <br><br> **(Cl. 1.)** | “a request by a user causing a user computer to request a template web page computer code file” |

| | |
|---|---|
| **"storing the template web page computer code file in a temporary computer memory of the user computer"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |
| **"causing the user computer to interpret the template web page computer code file"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |
| **"causing the first plurality of control buttons, the second plurality of visible items, and the host button of the template web page display to be stored in a first location in the temporary computer memory of the user computer;"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |
| **"causing the fourth plurality of hidden fields to be located at a second location in the temporary computer memory of the user computer;"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |
| **"causing the third plurality of visible items of the modified template web page display to be stored in the temporary computer memory of the user computer;"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |
| **"causing content and attributes of the third plurality of visible items of the modified template web page display to be taken from the first location in the temporary computer memory of the user computer and placed in the fourth plurality of hidden fields in the second location in the temporary computer memory of the user computer;"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that user selection of the host button must first occur as agreed in the prior step: "a user selection of the host button of the modified template web page display is received at the user computer" |

| | |
|---|---|
| **"sending the request object containing no html file to the server computer;**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that user selection of the host button must first occur as agreed in the prior step: "a user selection of the host button of the modified template web page display is received at the user computer" |
| **"receiving the request object containing no html file at the server computer;"**<br><br>**(Cl. 1.)** | "receiving at the server computer a stream of bytes stored temporarily in a computer's temporary memory, such as RAM (Random Access Memory) before the computer's browser program delivers it to another computer" |
| **"causing the server computer to take the content and attributes of the third plurality of visible items of the modified template web page display out of the request object containing no html file and to store them as text in a database;"**<br><br>**(Cl. 1.)** | No construction necessary as agreed (the parties agree the software service provider performs this step) |
| **"causing the browser computer program running on the visitor computer to interpret the print instructions"**<br><br>**(Cl. 1.)** | No construction necessary with the understanding that a user must first make a request as required by step 1 of the claimed method (as construed above). Thus, action by the user is required in the method of claim 1. |

> **B.** **"receiving the request object containing no html file at the server computer" ('122 Patent, Claim 1**

| **Plaintiff's Proposal** | **Defendant's Proposal** |
|---|---|
| "receiving at the server computer a stream of bytes stored temporarily in a computer's temporary memory, such as RAM (Random Access Memory) before the computer's browser program delivers it to another computer" | "Receiving a stream of bytes stored temporarily in a computer's temporary memory, such as RAM (Random Access Memory) at the server computer" |

Plaintiff states that this is the only term for which Defendant does not identify the actor. (Doc. No. 56 at 23–24.) Plaintiff argues that this "was intentional and only reinforces Plaintiff's theory that Defendant's proposed constructions for the previous ten action claim terms are

divorced from the intrinsic evidence and are purely based on furthering potential non-infringement claims." *Id.* Plaintiff argues that Defendant's construction is overly broad, and Plaintiff's alternative construction ends the construction within the specification's explicit definition. *Id.* at 24. Defendant does not specifically brief this term. (Doc. No. 60-1.)

At the claim construction hearing, the Court proposed the construction of "receiving at the server computer a stream of bytes stored temporarily in a computer's temporary memory, such as RAM (Random Access Memory) before the computer's browser program delivers it to another computer." The parties agreed to this construction. Therefore, the Court construes "receiving the request object containing no html file at the server computer" to mean "receiving at the server computer a stream of bytes stored temporarily in a computer's temporary memory, such as RAM (Random Access Memory) before the computer's browser program delivers it to another computer."

### C. "user selecting one or more of the first plurality of control buttons to form the third plurality of visible items of the modified template web page display." ('122 Patent, Claims 4, 6)

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| No construction necessary, as the term should be afforded its plain-and-ordinary meaning. | "The user selecting one or more of the first plurality of control buttons to form the third plurality of visible items of the modified template web page display" |

Plaintiff argues against Defendant's construction because adding the term "the" does not add any sort of clarification to the term's meaning, and limits the "selecting" to the original user in claim one, and not some other user. (Doc. No. 56 at 26.) Plaintiff argues that, because it would be understood from the plain and ordinary reading of the claim term that the user is performing the "selecting," no construction is necessary. *Id.* at 27. Defendant states that the

parties agree the user performance is required in all claims reciting this element. (Doc. No. 60-1 at 22.)

At the claim construction hearing, the Court proposed that no construction was necessary for this term with the agreed understanding that "a" user is the same user as recited in claim 1. The parties agreed to this interpretation. Therefore, with respect to the term "user selecting one or more of the first plurality of control buttons to form the third plurality of visible items of the modified template web page display," the Court finds no construction necessary with the agreed understanding that "a" user is the same user recited in claim 1.

> **D.** **"defining a particular visible item of the second plurality of visible items of the template web page display as global to form the third plurality of visible items of the modified template web page display by a user selecting one of the first plurality of control buttons" ('122 Patent, Claim 8)**

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| No construction necessary, as the term should be afforded its plain-and-ordinary meaning. | "The user defining a particular visible item of the second plurality of visible items of the template web page display as global to form the third plurality of visible items of the modified template web page display by a user selecting one of the first plurality of control buttons" |

Plaintiff argues that this construction is unlike the other disputed claim terms because it notes that the claim states the action is done by the user. (Doc. No. 56 at 28.) Plaintiff argues that term is sufficiently clear as stated. *Id.* Defendant states that parties agree the user performs this step. (Doc. No. 60-1 at 22.)

At the claim construction hearing, the Court proposed that no construction was necessary for this term with the agreed understanding that "a" user is the same user as recited in claim 1. The parties agreed to this interpretation. Therefore, with respect to the term "defining a particular visible item of the second plurality of visible items of the template web page display as global to form the third plurality of visible items of the modified template web page display by a

user selecting one of the first plurality of control buttons," the Court finds no construction necessary with the agreed understanding that "a" user is the same user recited in claim 1.

### E.    "move and be resized." ('122 Patent, Claim 12)

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| No construction necessary, as the term should be afforded its plain-and-ordinary meaning. | "The user moves and resizes" |

Plaintiff argues that this claim limitation is easy to identify and that Defendant's construction is at odds with how the claim is worded.  (Doc. No. 56 at 29.)  Plaintiff maintains that "move and be resized" are verbs describing actions that the visible items are caused to perform, but Defendant's construction make the verbs what the user does to the visible items.  *Id.*  Defendant argues that the construction is "a claim element that is material to claim scope.  It qualifies the claim element 'move and be resized' which [] requires user performance."  (Doc. No. 60-1 at 22.)

As this dispute relates back to the same issue discussed with respect to claim 1, the Court finds that no construction is necessary with the understanding that claim 1 requires action by the user as discussed herein.

## II.    AGREED CLAIM TERM CONSTRUCTIONS

The parties submitted the following terms for which they agreed on constructions:

| Term/Phrase | Agreed Construction |
|---|---|
| "hidden fields"<br><br>(Cl. 1.) | "parts of a web page code, which are hidden from a user and which do not control the layout and/or format of a web page display rendered by the specific web page code in which they are located" |
| "receiving at the user computer, a user selection of the host button of the modified template web page display." | "a user selection of the host button of the modified template web page display is received at the user computer." |

| **"location in the temporary computer memory"** **(Cl. 1.)** | "a memory address in the computer's temporary memory" |
|---|---|
| **"wrapped"** **(Cl. 1.)** | "placed into" |

(Doc. No. 64-1.)

After reviewing the parties' agreed constructions in light of the asserted claims, specification, and prosecution history, the Court finds the parties' agreed constructions appropriate and construes the terms as set forth above.

## CONCLUSION

For the foregoing reasons, the Court adopts the constructions set forth above.

So ORDERED and SIGNED this 7th day of February, 2018.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE